UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **YUN XIN LIN** <br> **REG. # 78471-053** | : | **CIVIL ACTION NO. 2:16-cv-1293** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **UNITED STATES OF AMERICA,** <br> **ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court are a Motion to Dismiss for Lack of Jurisdiction [doc. 24] filed under Federal Rule of Civil Procedure 12(b)(1) and a Motion for Summary Judgment [doc. 25] filed under Federal Rule of Civil Procedure 56 by the United States and United States Bureau of Prisons ("BOP"), in response to the complaint brought by plaintiff Yun Xin Lin under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Doc. 1. These motions are unopposed and have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

**I.**
**BACKGROUND**

Lin is an inmate in the custody of the Bureau of Prisons and is currently incarcerated at the Moshannon Valley Correctional Center in Philipsburg, Pennsylvania. His complaint relates to events that occurred at the Federal Correctional Institute at Oakdale, Louisiana ("FCIO"). Doc. 1. He raises four counts of negligent medical care by BOP providers at FCIO relating to treatment that he received and/or was allegedly denied for (1) hepatitis B, (2) a lipoma on his head, (3) a

hand injury, and (4) dental repairs to his molars. *Id.* at pp. 2–4, ¶¶ 20–73. He also asserts (5) that the BOP arbitrarily denied him access to education resources and (6) that the Department of Justice/BOP failed to comply with his FOIA request. *Id.* at pp. 4–6, ¶¶ 74–104. He seeks a declaratory judgment, as well as compensatory damages and injunctive relief in the form of an order compelling production of his medical records. *Id.* at pp. 6–7.

The United States and the BOP (collectively, "the government"), defendants in this matter, now bring the instant Motion to Dismiss and Motion for Summary Judgment. The government asserts that the court lacks jurisdiction over Lin's FOIA and educational resources claims, and that it is entitled to summary judgment on his medical/dental care claims. Doc. 24, att. 1; doc. 25, att. 1. Lin has not responded to either motion and his time for doing so has passed.

## II.
## LAW & APPLICATION

### A. *Rule 12(b)(1) Motion to Dismiss*

#### 1. *Legal Standard*

A motion under Rule 12(b)(1) attacks the court's jurisdiction to hear and decide the case. FED. R. CIV. P. 12(b)(1). A case should be dismissed for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden on such a motion lies with the party seeking to invoke the court's jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

The United States has immunity from suit under the doctrine of sovereign immunity. *Price v. United States*, 69 F.3d 46, 49 (5th Cir. 1995). "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 114 S.Ct. 996, 1000 (1994). The government may waive its sovereign immunity and consent to be sued, but such a waiver must be "unequivocally expressed" to be effective.

*United States v. Nordic Village, Inc.*, 112 S.Ct. 1011, 1014 (1992). A waiver is also "strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 116 S.Ct. 2092, 2096 (1996).

### *2. Application*

Lin names as defendants the Bureau of Prisons, a federal agency, and the United States. The government now moves to dismiss the FOIA and educational resources claims, asserting that the court lacks jurisdiction over those claims because the government has not waived its sovereign immunity.

The FTCA operates as a waiver of immunity for actions for money damages for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a). This waiver authorizes suits under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1); *e.g.*, *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009). Before filing suit under the FTCA, the plaintiff must first present the claim to the appropriate federal agency, a requirement recognized by the courts as jurisdictional. 28 U.S.C. § 2675(a); *e.g.*, *Barber v. United States*, 642 Fed. App'x 411, 413 (5th Cir. 2016) (unpublished) (citing *Cook v. United States*, 978 F.2d 164, 165–66 (5th Cir. 1992)).

Lin brought his claims based on negligent medical/dental care and denial of educational resources to help him learn English under the FTCA. Doc. 1, pp. 2–6. He also shows that he presented all of these claims to the Bureau of Prisons through a tort claim filed with the BOP South Central Regional Director on or about November 5, 2015. Doc. 1, att. 1. Accordingly, it appears that he has satisfied the presentment requirement and asserted these claims under one of the limited

waivers to sovereign immunity. As the government points out, however, Lin fails to show how the Bureau of Prisons would be liable under Louisiana law for this alleged denial because he does not identify any authority or case law creating a duty on the part of the BOP to provide inmates with educational resources for learning English. His claim thus sounds in discrimination rather than negligence and is not one where "a private individual under the same circumstances would be liable under the substantive law of the state in which the [action] occurred." *Ahern v. United States*, 2014 WL 1614154, at *2 (N.D. Tex. Apr. 22, 2014). FTCA's waiver of immunity does not extend to this claim and it should instead be pursued through a *Bivens* action against the individual allegedly responsible for the discrimination. Likewise, Lin cannot show a waiver of sovereign immunity with respect to the FOIA claims because (1) he fails to show how the government would be liable for such a claim under Louisiana law and (2) he did not present this requirement to the BOP.[1] *See* doc. 1, att. 1. Accordingly, there is no waiver of immunity with respect to the educational resources or FOIA claims and they must be dismissed without prejudice for lack of subject matter jurisdiction.

### B. Motion for Summary Judgment

#### 1. Legal standard

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material

---

[1] Lin attempted to raise his request for declaratory judgment on all claims as a separate count. *See* doc. 1, p. 6, ¶¶ 105–12. The Declaratory Judgment Act, 28 U.S.C. § 2201–02, creates a remedy; it is not an independent source of subject matter jurisdiction. *Sandoz, Inc. v. Amgen, Inc.*, 773 F.3d 1274, 1277 (Fed. Cir. 2014). Lin cannot use that claim as an attempt to show jurisdiction over his FOIA and educational resources claims.

-4-

fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Finally, "[a] motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule," and the movant still has the burden of establishing the absence of a genuine issue of material fact. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995). The nonmovant's failure to file an opposition and statement of contested material facts, however, requires the court to deem the movant's statement of uncontested material facts admitted for the purposes of this motion. Local Rule 56.2.

Louisiana Revised Statute § 9:2794 sets out the elements of a medical malpractice claim under Louisiana law. A plaintiff must prove: (1) the applicable standard of care; (2) a breach of

that standard of care by the defendant; and (3) that the plaintiff's injury was a proximate result of that breach. *Id.* at § 9:2794(A). Nurses who perform medical services are subject to the same standard of care as physicians: to exercise the degree of skill ordinarily employed under similar circumstances by members of the profession in good standing in the same community or locality, and to use reasonable care and diligence, along with their best judgment, in their application of skill to the case. *Little v. Pou*, 975 So.2d 666, 674–75 (La. Ct. App. 2d Cir. 2008). Injury alone does not create a presumption of negligence, and the plaintiff has not proven his case if the harm would have resulted nevertheless. La. Rev. Stat. § 9:2794(A)(3), (C); *Swartzlander v. Hunt Lab. Inc.*, 552 So.2d 1339 (La. Ct. App. 5th Cir. 1989). Expert testimony is usually required to establish the applicable standard of care. *Schultz v. Guoth*, 57 So.3d 1002, 1006–07 (La. 2011). However, an exception is made where "the negligence is so obvious that a lay person can infer [it] without the guidance of expert testimony." *Id.*

### 2. *Application*

The government moves for summary judgment on Lin's remaining claims, asserting that he cannot show any negligence in the medical care he received at FCIO. To this end it has provided a statement of uncontested facts [doc. 25, att. 22], which we deem admitted, and produced copious medical records relating to the care that was provided for each complained-of condition.

### a. *Hepatitis/malnutrition*

Lin states that he has hepatitis B and, as a result of this condition, requires appropriate medical monitoring, tests, and medication, as well as a suitable diet and at least 20 minutes to eat. Doc. 1, p. 2, ¶¶ 20–22. He also alleges that American Correctional Association standards require that inmates be given at least 20 minutes to eat. *Id.* at p. 2, ¶ 23. However, he maintains, FCIO personnel gave inmates inadequate time to eat and provided improper monitoring for his condition,

-6-

causing him to experience "unnecessary fatigue, malaise, damage to his liver and other organs, degradation of quality of life, recreation, general living, etc.," to be "at materially greater risk of severe adverse effects," and to "suffer[] from inadequate nutrition made more severe and consequential by his medical condition." *Id.* at ¶¶ 29–31.

Lin's hepatitis was first recorded by FCIO staff when he was screened upon his arrival there in March 2014. Doc. 25, att. 6, p. 3. There it was documented that Lin had been diagnosed with hepatitis in 2003, and that he did not appear jaundiced. *Id.* He told FCIO staff that he had not received any prior treatment for hepatitis and was not currently having any issues with it. Doc. 25, att. 7, p. 1. At an examination in April 2015, the provider noted no jaundice and instead recorded that Lin appeared "[w]ell." Doc. 25, att. 8, p. 3. The provider did not record any complaints about food quality or mealtime at these visits.

Lin's medical records for his time at FCIO, which lasted until April 2017, reveal that most of his clinical encounters related to the lipoma and dental issues described below as well as pain in his right wrist and thumb, itchy and dry eyes, and one encounter in July 2014 for headaches and lack of sleep. *See generally* doc. 25, atts. 4–11; doc. 25, att. 11, p. 14. In one visit on December 2, 2015, he also complained that his whole body was weak and tired, and blood work was ordered. Doc. 25, att. 9, p. 12. Lab work relating to his liver function was ordered in April 2014 and April 2015, and a clinical note from November 2015 appears to reflect that his lab work was normal. Doc. 25, att. 4, pp. 1, 24–25.

Lin produces no expert testimony or other guidance to back up his allegation that the monitoring he received through the blood work and other clinical encounters described above did not amount to "proper medical testing, monitoring, and treatment." Doc. 1, p. 2, ¶ 31. On the evidence provided, it appears that he did not suffer from any worsening of his hepatitis at FCIO

and that FCIO employees provided appropriate monitoring and treatment of his condition and related complaints. Accordingly, summary judgment should be granted as to this claim.

### b. *Lipoma*

Lin's next claim relates to the treatment he received for a lipoma on his head. A lipoma is defined under "Benign Tumors" as a "soft, movable, subcutaneous nodule[] with normal overlying skin." THE MERCK MANUAL OF DIAGNOSIS AND THERAPY § 10, p. 840 (Mark H. Beers and Robert Berkow, eds., 17th ed. 1999). Lin complains that his lipoma is "sensitive and unsightly," causes him pain, and interferes with his daily activities because he must protect it from being touched. Doc. 1, p. 2, ¶¶ 33, 35–36. He further asserts that BOP doctors approved surgical removal of the lipoma but then denied him the operation. *Id.* at ¶ 34.

The lipoma was noted at a clinical encounter on March 31, 2014, soon after Lin's arrival at FCIO. A nurse recorded that Lin had "left temporal soft tissue cysts x 2 . . . , adjacent to each other with total diameter measured at 4 cm; area elevated, tender upon palpation" and diagnosed him as having a chronic lipoma. Doc 25, att. 7, pp. 3–4. Based on chart review, the provider stated that Lin had been seen by a general surgeon at another BOP facility in July 2013 and that a recommendation for excision of the lipoma had been denied in January 2014. *Id.* at 1. The FCIO provider also noted that the lipoma had increased in size within the last year and was causing headaches, and requested a surgical consult for excision. *Id.* at 4. The consultation request was approved on May 6, 2014. Doc. 25, att. 11, p. 9. On June 3, 2014, Lin presented at sick call and complained that the lipoma might be getting bigger. *Id.* at 10–12. The provider observed no obvious increase in size, drainage, or erythema. *Id.* at 11. She provided counseling on Lin's plan of care, which was to "await call out for approved and scheduled general surgery consult." *Id.* at 12. The request for consult was then sent on to the Utilization Review Committee, which

forwarded same to the Regional Medical Director for review on July 31, 2014. Doc. 25, att. 6, p. 15. On December 3, 2014, the regional director denied surgery consult for removal of the lipoma as not medically necessary. Doc. 25, att. 4, p. 7. Lin made another sick call relating to the lipoma on January 26, 2015, complaining that it was growing and causing him pain. Doc. 25, att. 4, pp. 19–20. The provider determined that the lipoma's status had not changed and told Lin that the regional director had denied the surgical consult. *Id.* She also prescribed naproxen after Lin complained of tenderness from the lipoma and pain in his right wrist and thumb, infra. *Id.* Lin went to Health Services twice for his lipoma and wrist/thumb in February 2015, where it was noted that the two sites of the lipoma had joined into one but that there was no change in size to the lesion. *Id.* at 21–23. He was seen again in April, May, and July 2015, and the provider recorded at these visits that the lipoma remained "Not Improved/Same." Doc. 25, att. 8, pp. 2–3, 6–8; doc. 25, att. 9, pp. 1–2. In July 2015 he also complained headaches from the lipoma and stated that over the counter pain medications were not working. Doc. 25, att. 9, pp. 1–2. The provider prescribed naproxen. *Id.* at 2.

      Lin returned to Health Services on October 20, 2015, complaining of tenderness from the lipoma. *Id.* at 3. This time the provider ordered another general surgery consult. *Id.* at 4–5. Exam comments from a sick call visit in August 2016 show that the consult was approved in December 2015 and that the appointment scheduling was then pending. Doc. 25, att. 20, p. 2. At the August 2016 sick call Lin asked to take his medicine at night because of headaches, but did not otherwise complain of the lipoma. *Id.* at 1–2. There is no record of a second consult on the lipoma taking place before Lin was transferred from FCIO in April 2017. A request for surgical consult on the lipoma was submitted on April 20, 2017, from Lin's new facility, but the request was deferred. Doc. 25, att. 13.

Under this record, the government has shown that FCIO medical staff responded to Lin's complaints about the lipoma by repeatedly evaluating his condition, monitoring the lipoma for growth, and treating his complaints of pain. The fact that the condition was never determined to be surgical does not show that any provider breached a duty with respect to Lin, and Lin produces no expert testimony or other evidence to refute the government's showing that FCIO staff provided competent care. Accordingly, there is no genuine issue of material fact and the government is entitled to judgment as a matter of law on this claim.

### c. *Thumb/wrist injury*

Lin's next claim relates to treatment he received for an injury to his right hand. Doc. 1, p. 3, ¶¶ 37–48. He states that his hand was injured in an assault against him in December 2013 and then reinjured by the actions of a BOP employee in February 2014. *Id.* at ¶¶ 37, 41. He complains that FCIO employees were negligent in their evaluation and treatment of this injury, particularly in failing to obtain a follow-up evaluation and treatment from an outside provider for him. *Id.* at ¶¶ 43–46. As a result, he states that his hand has not healed correctly and that his thumb is painful to move, with only about 30 to 40% of its normal strength. *Id.* at ¶¶ 46–47.

Although Lin complains that "the re-injury and damage was caused by acts that were negligent if not grossly negligent or worse," [doc. 1, p. 3, ¶¶ 41–42], he does not describe the circumstances around this injury, which must have been inflicted before his arrival at FCIO, or which BOP employee was responsible. Accordingly, he fails to state a claim on which relief may be granted regarding the occurrence of the injury and the government is entitled to judgment as a matter of law, to the extent that he intended to assert that event as a basis for relief.

As to the care of that injury at FCIO, the government shows that "right thumb discomfort/deformity due to injury at prior institution" was observed and reported during Lin's

initial evaluation on March 31, 2014. Doc. 25, att. 7, p. 2. An X-ray taken on March 5, 2014, showed no acute fracture or dislocation. *Id.* X-rays of the affected hand were also taken in April and November of 2014, with negative findings. Doc. 25, att. 6, pp. 6, 9; doc. 25, att. 11, pp. 7–8. He was evaluated by an orthopedic surgeon on December 9, 2014. Doc. 25, att. 4, pp. 2, 8–11. The surgeon diagnosed Lin with a right thumb ulnar collateral ligament tear, ordered pain medication, an MRI, ace bandage, and brace, and indicated that follow-up treatment would be decided after the MRI. *Id.* Lin was informed of the results at a sick call encounter for his thumb on January 26, 2015. Doc. 25, att. 5, p. 9. There it was noted that his pain medication had been filled on January 20, 2015, and that he should report to the pill line to pick it up. *Id.* at 9–10. He also reported wrist pain at two sick call visits in February 2015. *Id.* at 11–13. At a clinical encounter on April 24, 2015, he asked for a replacement ace bandage but indicated that he was not experiencing pain. Doc. 25, att. 8, p. 2. In clinical encounters in May, July, and October 2015, he asked about the treatment plan for his hand but did not report pain. *Id.* at 6; doc. 25, att. 9, pp. 1–2, 4. In December 2015, he did report pain and was issued a splint. Doc. 25, att. 9, pp. 11–12. The provider recorded that the MRI had received regional approval and noted that she would proceed with scheduling and resubmit the follow-up consultation with the orthopedic surgeon, to occur once the MRI was completed. *Id.* at 12.

The orthopedic surgeon's records show that that physician reviewed the MRI in February 2016, diagnosed Lin with a "likely dorsal plate rupture at the MCP joint of the thumb," and referred him to a hand surgeon because "[t]here is nothing more we can do at our facility." Doc. 25, att. 15, pp. 1–2. He reissued the referral when Lin returned to the orthopedic clinic in August 2016, after not having been seen by the hand surgeon. *Id.* The consult with the hand surgeon occurred on September 1, 2016. *Id.* at 3. The hand surgeon reported that "[t]here is no surgical option for him

at this time" and recommended "a custom Thermoplast hand-based right thumb spica [splint]" with non-steroidal anti-inflammatory medication and return trips to the clinic as needed. Doc. 25, att. 17, pp. 1–2.

Despite delays of several months in consults, there was ultimately no delay in treatment – the outside physicians determined that there was no surgical option for Lin's thumb. In the meantime, a wrap, splinting, and pain medication were provided for him and he cannot show that any delay in treatment resulted in an exacerbation of his condition or unnecessary suffering. Accordingly, there is no dispute as to any material fact and the government is entitled to judgment as a matter of law on the negligence claim relating to this condition.

### d. Dental care

Finally, Lin complains of dental care at FCIO. He states that he lost his "top right 2nd molar" in March 2015, that he has been requesting and denied dental care, and that there is a four year waiting list for dental care at FCIO. Doc. 1, p. 3, ¶¶ 49–55. He also complains that an inadequate diet at the prison contributes to his dental issues and that he and other FCIO inmates are denied the opportunity to go off-site for dental care. *Id.* at ¶¶ 66–73.

The government shows that Lin complained about tooth pain in his upper right first molar on January 30, 2015, with an onset one to four weeks before. Doc. 25, att. 2, p. 1. An examination was performed that day, with X-rays taken, and a dentist determined that it appeared Lin had lost a filling. *Id.* at 1–2. He applied a provisional restorative mixture to the tooth and discharged Lin to housing. *Id.* at 2. Lin returned, complaining of toothache with onset one week before, on February 20, 2015. *Id.* at 3. A dentist extracted the tooth that day and prescribed ibuprofen. *Id.* at 3–4. Lin's dental records also show that he was treated for dry socket subsequent to a tooth extraction at the FCIO dental clinic in April 2014. Doc. 25, att. 3, pp. 11–12.

There is nothing to support that further repair was requested or indicated, and Lin did not complain of mouth pain or difficulty eating at subsequent clinical encounters or dental hygiene visits. *See* doc. 25, atts. 2, 3, 12. Lin's allegation that he could not eat when the record shows only two teeth were removed is insufficient to show any breach of a standard of care. His allegations regarding care or delays in care for other inmates are not germane to his own claim, and he has not shown that his inability to go off-site for dental care 1) was an unreasonable limitation in light of his incarceration or 2) impeded the quality or timeliness of the care he received. Accordingly, the government has succeeded in showing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law on this claim.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion to Dismiss and Motion for Summary Judgment [docs. 24, 25] be **GRANTED**, that the educational resources and FOIA claims be **DISMISSED WITHOUT PREJUDICE** under Federal Rule of Civil Procedure 12(b)(1), and that the medical/dental care claims be **DISMISSED WITH PREJUDICE** under Federal Rule of Civil Procedure 56. Adoption of this recommendation will thus result in dismissal of the action as a whole.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon

grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

      THUS DONE AND SIGNED in Chambers this 7th day of September, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE